# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TALBIRD REEVE SAMS<br><br>*Plaintiff*,<br><br>v.<br><br>PINNACLE TREATMENT CENTERS, INC., JOHN DOES (1-10) (said names being fictitious individuals) and ABC-XYZ CORPORATIONS (said names being fictitious business entities), Individually, Jointly and Severally, | Case No. 1:18-CV-09610-JHR-AMD<br><br>**Opinion** |

This matter is before the Court on Defendant Pinnacle Treatment Centers, Inc.'s ("Pinnacle" or "Defendant") Motion in Limine to Exclude Testimony and Report of Brian H. Kleiner [Dkt. 65] and Plaintiff Talbird Reeve Sams' ("Plaintiff") response thereto [Dkt. 68]. For the reasons discussed below, the Court will grant Defendant's motion.

## I. Background

Plaintiff worked for Pinnacle as an "OTP Developer" in Pinnacle's development department. [Dkt. 87 at 2]. Pinnacle terminated Plaintiff's employment, allegedly as part of a corporate restructuring where Pinnacle dissolved its development department and distributed Plaintiff's responsibilities to other employees. [*Id.* at 2–3]. Plaintiff argues that Pinnacle fabricated this "restructuring" narrative as pretext and, in reality, Pinnacle violated the New Jersey Law Against Discrimination ("NJLAD") by terminating Plaintiff due to his age. [*See id.* at 11–13]. On May 20, 2021, the Court denied the parties' motions for summary judgment on Plaintiff's NJLAD claim. [*See id.*].

1

According to Plaintiff, Pinnacle failed to produce any documents in discovery that evidenced Pinnacle's corporate restructuring. [*See* Dkt. 87 at 9–10]. Plaintiff hired Dr. Brian H. Kleiner ("Kleiner"), a professor of human resource management at California State University, Fullerton, as an expert to review and opine on the significance of this evidence or lack thereof. [*See* Dkt. 63-5 at 93–147]. Dr. Kleiner concluded that the lack of a "paper trail" concerning Pinnacle's reorganization "leads [him] to opine that any claimed reorganization did not occur." [Dkt. 63-5 at 100].

## II. Motion to Exclude

Defendant filed this motion in limine to exclude Kleiner's expert report and testimony, arguing that Kleiner is not qualified to opine on this subject area and that his opinion is based on insufficient facts, is unreliable, does not fit the facts of this case, is irrelevant, and improperly provides a legal conclusion. [Dkt. 65; *id.* at 3, 6].

Plaintiff opposes Defendant's motion, arguing that it was "impossible" for Kleiner to provide a more robust analysis or consider more evidence because Defendant failed to produce "even one fact … to support and/or describe its alleged reorganization/restructuring." [Dkt. 68 at 5]. Plaintiff further argues that

> [o]n the existing record, there are no facts that are so complicated and/or beyond the understanding and grasp of any trier of fact so as to require expert testimony in that defendant failed to provide even a scintilla of evidence or information to allow a trier of fact to access the appropriateness of its conduct.

[*Id.* at 4].

## III. Legal Standard

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) govern the admissibility of expert testimony. Rule 702 provides that

2

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)). "A Rule 702 determination is a question of law for the district court. *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 593 (D.N.J. 2002), *aff'd*, 68 F. App'x 356 (3d Cir. 2003).

## IV. Discussion

Rule 702's reliability prong requires courts to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592–93. When evaluating the reliability of an expert's report, courts must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The *Daubert* Court identified four non-exclusive factors to consider when determining whether an expert applied a reliable methodology: "(1) whether the theory can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the rate of error; and (4) whether the theory or technique has been generally accepted within the putative expert's respective community." *Goodman v. Burlington Coat Factory*, No. CV 11-4395 (JHR), 2019 WL 4567366, at *5 (D.N.J. Sept. 20, 2019) (citing

3

*Daubert*, 509 U.S. at 595). Third Circuit courts also consider "(5) the existence and maintenance of standards controlling the technique's operation; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." *Id.* (citing *In re Paoli R.R. Yard PCB, Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)). A district court has as much "flexibility" "when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 500 (D.N.J. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999)).

### i. Kleiner's Methodology

Kleiner's report relies on two documents produced by the University of California at Berkeley ("Berkeley") for Berkeley's own internal use titled "Steps in Managing a Reorganization" and "Guidelines for Department Reorganization, Human Resources, University of California, Berkeley (collectively the "Berkeley Guidelines"). [Dkt. 65-3 at 78–79, 82, 88, 98-99]. Kleiner testified that these documents came from a "critical—respected authority at [Berkeley]" [*id.* at 68] but admitted that he had "no idea" whether those documents had been peer reviewed." [*Id.* at 85]. Kleiner's report provides a bulleted list of twenty steps—some of them with sub-bullets—which purport to define "the steps in managing a reorganization the size of defendant's with proper human resource management." [*Id.* at 100–02]. With a few minor alterations, Kleiner copied and pasted this twenty-step list from one of the Berkeley Guidelines. [*Id.* at 82].

Kleiner testified that he did not know whether several of the twenty steps applied to Pinnacle. For example, one step suggests notifying unions a pending reorganization. [*Id.* at

4

101]. Kleiner testified that he was "not aware of" any unions at Pinnacle. [*Id.* at 84]. Another bullet suggests "[o]rder[ing] potential layoffs for career positions based on seniority points." [*Id.* at 101]. Kleiner testified that he did not know whether Pinnacle employed a "seniority system." [*Id.* at 85]. The Berkeley Department Guidelines advised Berkeley staff to contact "your Vice Chancellor or Dean" regarding "operational improvements" [*id.* at 79], while Pinnacle does not have deans or vice chancellors.

After listing these twenty steps, Kleiner concluded that "to follow these steps, even in an abridged manner, would have to leave a paper trail if these steps are to be done completely." [*Id.* at 102]. But Kleiner also testified that these guidelines were not mandatory, and that they would not require an entity undergoing reorganization to complete those steps or produce any specific documentation in connection with those steps. [*Id.* at 88–89]. Kleiner admitted that he was unaware of any private-sector employers that have followed his proposed steps when managing a reorganization. [*Id.* at 87].

To reach his conclusions, Kleiner did not conduct any statistical or empirical analysis. [*Id.* at 56–57]. Instead he relied on method known as "content analysis" to compare the facts of this case to "relevant criteria for appropriate human resource management" as defined above. [*Id.* at 146]. According to Kleiner's report, content analysis "involves reading relevant documents and identifying key concepts and sentences and then compiling them into themes." [*Id.* at 150]. Kleiner testified that he did not write down any themes, concepts, or sentences because it was "so obvious … that there was no evidence to support that virtually anything that was identified in the reorganization and department restructuring … by Pinnacle." [*Id.* at 67].

Kleiner testified that he could not identify any publications from a list of peer-reviewed journals which established the "scientific validity" of content analysis [*id.* at 57] or any "leading

5

publications in the area of content analysis." [*Id.* at 59]. Kleiner referred instead to the textbook "Organizational Behavior" which "states in its appendix … that [content analysis] is one of a number of respected research methods responsible for determining facts in the textbook." [*Id.* at 58]. Defendant attached a scan of the index of the fifteenth and seventeenth editions of this textbook, neither of which mention content analysis. [*Id.* at 187–209]. Kleiner could not identify any "human resource professionals who have accepted content analysis as a technique for human resource work." [*Id.* at 60]. Kleiner further testified that he could not identify an example of content analysis being used to determine whether departmental restructuring occurred. [*Id.* at 67–68]. According to Kleiner, content analysis does not have a single identifiable error rate, and he could not identify an "inherent rate of error" for content analysis. [*Id.* at 58, 73].

### ii. Analysis

Kleiner's methodology does not meet the minimum threshold for reliability under Rule 702. Kleiner's report and testimony fail to explain why the Berkeley Guidelines upon which his report relies are pertinent to any institution other than Berkeley, let alone a nationally operating substance abuse treatment clinic like Pinnacle. He does not identify similarities or explain differences to justify the use of the Berkeley Guidelines.[1] Kleiner readily admits that several of the twenty steps do not apply to Pinnacle and that he cannot identify any other institutions that apply this framework to corporate reorganizations. As the Supreme Court has held, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v.*

---

[1] Kleiner testified that he learned of Pinnacle's size from Plaintiff and his report lists "steps in managing a reorganization the size of the defendant's," but then indicated that the Berkeley Guidelines address "steps for managing a reorganization, generally." [Dkt. 65-3 at 86].

6

*Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Here, Kleiner does not even offer his own say-so to justify his reliance on the Berkeley Guidelines.

Kleiner's use of content analysis to compare the facts of this case with the Berkeley Guidelines is also unreliable. Six of the eight factors for testing a methodology's reliability apply to Kleiner's report, and all weigh against admissibility. As to (1), Kleiner did not ground his report in a testable hypothesis and did not conduct any empirical or statistical analysis to validate his findings. [Dkt. 65-3 at 56–57]. (2) Kleiner could not identify peer-reviewed literature discussing content analysis or its application to evaluate corporate reorganization, and the lone textbook he cites apparently does not identify content analysis as a valid analytical tool. [*Id.* at 57, 59]. (3) Kleiner testified that he could not identify an error rate for content analysis because he believes there is no single error rate. [*Id.* at 58]. Kleiner testified that content analysis is an accepted scientific method but, again, could not identify literature or practitioners to substantiate this claim (4). [*Id.* at 57–59]. Kleiner testified that the "standards" of the content analysis methodology require him to identify themes in the evidence, but that he did not do that here (5). [*Id.* at 67]. Even if he did, Kleiner did not identify any standards by which to assess his themes for accuracy, validity, or significance. Kleiner has never published on the use of content analysis (7). [*Id.* at 31].

While common sense may support Kleiner's conclusion that a lack of paper trail suggests a lack of reorganization, a properly applied and valid scientific methodology does not. As such, the Court need not admit Kleiner's "bare conclusions or mere assumptions proffered under the guise of [an] 'expert opinion[].'" *Feit v. Great-W. Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 637 (D.N.J. 2006).

7

Plaintiff's argument that the Court should overlook any shortcomings in Kleiner's report because they result from the non-existent evidentiary record fails for two reasons. First, the evidentiary record did not compel Kleiner to rely on the Berkeley Guidelines or content analysis, or to do so without ample explanation or justification.

Second, this argument calls into question whether Kleiner's expert report is appropriate at all. Plaintiff argues that because the factual record is so sparse, "there are no facts that are so complicated and/or beyond the understanding and grasp of any trier of fact so as to require expert testimony." [Dkt. 68 at 4]. Kleiner himself seemed to agree when he testified that the lack of evidence made his conclusion so "obvious" that he did not bother to write down themes as part of his content analysis. [Dkt. 65-3 at 67].

*Daubert* requires the Court as the "gatekeeper" of scientific evidence to determine whether expert testimony helps to assess issues in a case, or whether a lay person has sufficient knowledge to consider those issues without an expert's assistance. *See* Fed. R. Evid. 702 Notes of Advisory Committee on Proposed Rules.[2] *See also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("The District Court has discretion to determine whether expert testimony will help the trier of fact." (citing *United States v. Agnes*, 753 F.2d 293, 303 (3d Cir. 1985), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998))). "[E]xpert testimony covering an area known and within the knowledge of a layperson is not helpful." *Kuhar v. Petzl Co.*, No. CV 16-0395 (JBS/JS), 2018 WL 6331682, at *3 (D.N.J.

---

[2] "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Fed. R. Evid. 702 Notes of Advisory Committee on Proposed Rules (quoting Ladd, *Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)).

Dec. 4, 2018) (citing *Bryan v. Shah*, 351 F. Supp. 2d 295, 302 n.14 (D.N.J. 2005)). "Further, expert testimony is not helpful 'when the untrained layman would be qualified to determine ... the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Id.* (quoting *Senese v. Liberty Mutual Ins. Co.*, 661 Fed. App'x 771, 775 (3d Cir. 2016)).

By arguing that the factual record is so limited that Kleiner could not complete his analysis and that a lay person could "understand[] and grasp" the facts of this case [Dkt. 69 at 3], Plaintiff concedes that Kleiner's report would not be helpful to a jury. *Kuhar*, 2018 WL 6331682, at *3. Thus, Plaintiff's attempt to uphold Kleiner's further justifies its exclusion.

## V.  Conclusion

For the reasons discussed above, the methodology employed in Kleiner's expert report is unreliable, and the Court will grant Defendant's motion to exclude Kleiner's opinion and report. An appropriate order will follow.

May 26, 2021                                                                  /s/ Joseph H. Rodriguez

                                                                    Hon. Joseph H. Rodriguez, U.S.D.J.